**NATIONAL VAN LINES, a corporation, Appellant,**

v.

**Alfred E. DEAN, trading under the firm name of National Transfer & Storage Co., Appellee.**

**No. 14975.**

United States Court of Appeals Ninth Circuit.

Oct. 18, 1956.

Rehearing Denied Nov. 27, 1956.

Wilkinson, Huxley, Byron & Hume, Gerrit P. Groen, Kenneth T. Snow, Chicago, Ill., Albert J. Fihe, Burbank, Cal., for appellant.

Mason & Graham, Collins Mason, William R. Graham, Howard B. Turrentine, C. P. Von Herzen, S. L. Laidig, Los Angeles, Cal., for appellee.

Before STEPHENS, CHAMBERS, and HAMLEY, Circuit Judges.

HAMLEY, Circuit Judge.

This is an action for injunctive relief, an accounting, and damages. It is based un the asserted infringement of a registered service mark, unfair competition, and breach of contract. Judgment was entered for defendant, and plaintiff appeals.

Appellant, National Van Lines, Inc., is an Illinois corporation. It engages in the nation-wide business of moving household goods by motor van. The forerunner of the present company was started in 1928, under the name "National Shippers & Movers." In about 1930, the company began using this name, placed horizontally on a shield with vertical stripes, as a service mark.

In June, 1934, the business was incorporated under the name "National Van Lines, Inc." The service mark was then changed to its present form. It shows the new name in blue or black, between heavy red or black lines, across the middle of a shield. The upper part of the shield is in blue or black, across which the words "Nation Wide" appear in white. The lower part of the shield, outlined in blue or black, consists of red and white, or black and white, vertical stripes.

Late in October, 1944, appellant and appellee, Alfred E. Dean, entered into negotiations looking to the execution of an agency contract. In contemplation of this arrangement, Dean began a local moving van business in the San Diego Bay area, under the name "National Van & Storage." The contract was signed on November 7, 1944. Under its terms, appellee undertook to book interstate shipments for appellant on a commission basis. The business so booked was to be handled by appellant under the latter's name.

Appellee, who was permitted to continue his local moving business, agreed in this contract that he would not use the names "National Van," "National Van Lines," or "National Van Lines, Inc." As soon as the contract was executed, Dean accordingly changed his firm name to "National Transfer & Storage Co."

On May 17, 1948, appellant filed an application for the registration of its service mark, described above, on the principal register of the United States Patent Office. The application states that no claim is made to the words "Nation Wide" and "Van Lines, Inc." apart from the mark as shown. This mark was registered on September 11, 1951. On January 4, 1952, appellant filed a similar application to register the service mark "National Van Lines" without the shield. This was registered on September 9, 1952.

In November, 1949, Dean adopted the service mark which, appellant asserts, infringes upon the latter's mark, constitutes unfair competition, and amounts to a breach of the agency contract. In Dean's mark, the words "National Transfer & Storage," in blue or black, are superimposed across the middle of an

outline map of the United States. The word "National" is emphasized by the use of shaded block letters. The upper part of the outline map is shown in light blue or gray. The lower part consists of red and white, or black and white, vertical stripes, across which the words "Coast to Coast via Motor Van" appear.

The agency contract was canceled by Dean on February 20, 1950. He immediately changed the character of his business from that of a local mover to a nation-wide mover. His business increased from a four-van local moving business, grossing $8,900 in 1944, to an eighty-three-van nation-wide business, grossing $688,000 in 1951. Thus, appellant and appellee became, and now are, direct nation-wide competitors.

Appellant instituted this action on November 26, 1952. An injunction, accounting, and damages were sought. Appellee answered with a general denial, an affirmative defense questioning the validity of appellant's trademarks and registrations, and an affirmative defense of estoppel.

After trial, findings of fact, conclusions of law, and a judgment were entered favorable to appellee. The court found that appellee had not committed any act of trademark infringement, had not committed any act of unfair competition, and had not violated the contract. It was found that there was no likelihood of confusion occurring in the public mind as between appellant and appellee, or their services. The court also found that, about six months before the trial, appellee changed the name of his business to "Dean Van Lines," and is no longer using the name "National Transfer & Storage Co." While the court entered findings favorable to appellee on factual questions pertinent to the validity of appellant's trademarks and registrations, there was no express holding as to their validity or invalidity.

Appellant asserts that a cause of action was established with respect to all three theories pleaded.[1] If appellant is correct as to any one of these, the trial court erred in rendering judgment for appellee. We will first direct our attention to the specifications of error pertinent to appellant's claim of unfair competition.

As to this claim, the law of the state in which the acts occurred (California) governs. Sunbeam Furn. Corp. v. Sunbeam Corp., 9 Cir., 191 F.2d 141, 731.

Unfair competition is proscribed by statute in California, and may be enjoined.[2] The deceptive use of a similar name, or the emblematic representation of such name by a competitor, is unfair competition.[3] It is not necessary to prove fraud, since the California statute, as amended in 1933, refers to "unfair *or* fraudulent business practice". (Emphasis supplied.)[4]

Nor is it necessary to prove that *any* person has been confused or deceived; it is sufficient that there is a likelihood of deception. MacSweeney Enterprises, Inc., v. Tarantino, 106 Cal.App. 2d 504, 235 P.2d 266. The test to be applied in determining whether there is a likelihood of deception is stated in American Automobile Ass'n v. American Auto-

---

1. Infringement of registered service mark, unfair competition, and breach of contract.

2. Civil Code of California, 1949, § 3369:
 " * * * 2. [Unfair competition enjoinable] Any person performing or proposing to perform an act of unfair competition within this State may be enjoined in any court of competent jurisdiction.
 "3. [Definitions] As used in this section, unfair competition shall mean and include unfair **or** fraudulent business practice and unfair, untrue or misleading advertising and any act denounced by Penal Code sections 654a, 654b or 654c."

3. Pohl v. Anderson, 13 Cal.App.2d 241, 5 P.2d 992; American Distilling Co. v. Bellows & Co., 102 Cal.App.2d 8, 226 P.2d 751.

4. Wood v. Peffer, 55 Cal.App.2d 116, 130 P.2d 220; McCord v. Plotnick, 108 Cal. App.2d 392, 239 P.2d 32; Schwartz v. Slenderella Systems, 43 Cal.2d 107, 271 P.2d 857.

mobile Owners Ass'n, 216 Cal. 125, 13 P.2d 707, at page 710, 83 A.L.R. 699, as follows:

"Would a person exercising that care, caution and power of perception which the public may be expected to exercise in the matter which it has in mind, mistake one of said emblems for the other?" [5]

 The trial court found that, except for possible isolated instances involving careless observers, there is no likelihood of any confusion occurring in the public mind as between appellant and appellee, or their services.

We believe this finding to be clearly erroneous. There is a striking similarity of the distinctve features of the two service marks. The principal characteristic of each is the use of vertical stripes in red and white, or black and white, below a name which begins with the word "National." The likelihood of confusion is enhanced because of the fact that both companies render the same kind of service, and both use the mark on moving vans and in telephone directory advertising.

It is true that, in one case, the vertical stripes take the form of a shield, and in the other, of an outline map of the United States. This seems to us a relatively insignificant difference, wholly inadequate to establish the separate identities of the otherwise similar marks.

On June 15, 1953, appellee announced that he would thereafter operate under the name "Dean Van Lines." The explanation publicly given for this change was that, because so many companies operate under names beginning with the word "National," " * * * we have experienced difficulties from time to time, due to confusion of similar names." In so far as appellant's competing service is concerned, it seems clear that appellee added to this admitted confusion by adopting the distinctive vertical-stripe feature of appellant's mark.

It was no pure coincidence or mere inadvertence which caused appellee to adopt a mark so like that of appellant. He developed his service mark at a time when he was an agent for appellant, and shortly before terminating that relationship. He was fully aware of the fact that appellant was then using and extensively advertising such a mark. The inference is compelling that appellee intentionally sought to confuse and deceive prospective customers and thereby accomplish a transfer of business and good will from principal to erstwhile agent. The trial court's finding to the contrary is clearly erroneous.

It is not essential to show intent to deceive in order to establish a case of unfair competition. But, if such an intent is shown, it raises a presumption that deception and confusion resulted. As stated in National Lead Co. v. Wolfe, 9 Cir., 223 F.2d 195, at page 202, certiorari denied 350 U.S. 883, 76 S.Ct. 135, 100 L.Ed. ——.

" * * * a late comer who deliberately copies the dress of his competitors already in the field, must at least prove that his effort has been futile. * * * "

We need not, however, speculate as to the likelihood of confusion between the two marks. The testimony is well-documented and undisputed that actual confusion did result. This testimony came from one of appellee's customers, three competitors, and two of appellant's employees. Appellee, himself, testified that, in the Monterey area, his company had experienced some confusion as to the identity of the two companies.

We therefore hold that use by appellee of a service mark utilizing the word "National" in connection with vertical stripes is likely to confuse and deceive, causing members of the public to mistake such mark for the prior mark of appellant.[6]

---

5. See, also, Scudder Food Products v. Ginsberg, 21 Cal.2d 596, 134 P.2d 255.

6. Appellee appears to have now abandoned the use of "National" with the vertical stripes. Instead, he uses "Dean

Appellee urges, however, that there are other reasons why appellant cannot prevail on its claim of unfair competition.

In this connection, it is argued that the word "National" is a geographic adjective which is neither fanciful nor distinctive, and hence incapable of appropriation as a service mark. It is also argued that appellant does not have the exclusive use of the word "National," nor of the vertical stripes, since many other companies, including some which engage in the moving business, utilize one or the other of these insignias.

Appellant is not seeking to protect the word "National" or vertical stripes, considered separately, as service marks. It is the composite of the word plus the stripes which appellant here defends. As Mr. Justice Holmes said, in Schlitz Brewing Co. v. Houston Ice Co., 250 U.S. 28, 39 S.Ct. 401, 63 L.Ed. 822, "It is a fallacy to break the fagot stick by stick." No other company, save appellee, was shown to be using such a composite mark at the time this suit was brought. That composite mark, in our opinion, is sufficiently distinctive to deserve judicial protection.

■■■■ Appellee argues that injunctive relief and damages should be denied because a Wisconsin company engaged in the moving business made prior use of the name "National Van Lines," and continues to use such name.

This argument is without merit as to the claim of unfair competition now under discussion. Once it is established that a late comer's use of another's business insignia is likely to deceive or confuse, a case of unfair competition is established. Such practice is unfair to appellant, notwithstanding another's prior use of the name component of appellant's service mark.[7]

■■■ Appellee refers to appellant's

service mark as being a close simulation of the "official shield" of the United States. This is apparently intended to give application to 15 U.S.C.A. § 1052 (b), which provides that a trademark may not consist of or comprise the flag or coat-of-arms or other insignia of the United States.

Appellee, however, fails to cite any authority, statutory or otherwise, for the proposition that a shield with vertical stripes is an official coat-of-arms or insignia of the United States. We need not decide whether, if such were the case, it would defeat appellant's claim of unfair competition, as distinguished from its claim of service mark infringement.

■■■ Appellee cites Procter & Gamble Co. v. J. L. Prescott Co., 3 Cir., 102 F.2d 773, certiorari denied 308 U.S. 557, 60 S.Ct. 80, 84 L.Ed. 468, and Aunt Jemima Mills Co. v. Rigney & Co., 2 Cir., 247 F. 407, L.R.A.1918C, 1039, certiorari denied 245 U.S. 672, 38 S.Ct. 222, 62 L.Ed. 540, for the proposition that "estoppel by laches" precludes appellant from obtaining relief in this suit.

In the Procter & Gamble case, it was held that where a competing product had been aggressively marketed over a period of eight years, with millions of dollars being spent to advertise it before an injunction was sought, laches was a defense. In the Aunt Jemima case, it was held that, although plaintiff had delayed eight years in asserting its rights, it was still entitled to an injunction, though not to an accounting and profits.

In the instant case, there was nothing approaching such a delay in the assertion of appellant's claim. The name "National Transfer & Storage Co.," assumed by appellee while the agency relationship existed, was not deceptive prior to the addition of the vertical stripes. The stripes were added late in 1949, shortly

---

Van Lines" with vertical stripes. The ruling just stated does not apply to the latter service mark. It is necessary to deal with the earlier service mark, however, since it was the one in use when this action was commenced. Moreover,

appellee has not legally abandoned the former mark.

7. Del Monte Special Food Co. v. California Packing Corp., 9 Cir., 34 F.2d 774. See, also, American Philatelic Society v. Claibourne, 3 Cal.2d 689, 46 P.2d 135.

before the agency was terminated. On November 9, 1951, appellant complained to appellee of the latter's use of the service mark. The action was instituted on November 26, 1952.

In our opinion, these facts fail to establish a defense of acquiescence, laches, or estoppel.

We hold that appellant is entitled to an injunction restraining appellee from continuing or resuming the unfair competition complained of, as it existed when this suit was instituted. The conclusion so reached makes it unnecessary to consider appellant's alternative theories of service mark infringement and breach of contract.

Appellant asked not only for an injunction, but also for an accounting and damages. The trial court did not pass upon this matter, since it held that no cause of action was established.

Whether or not, if unfair competition is shown, an accounting proceeding should be ordered, preparatory to the allowance of damages, is largely a matter of discretion. Dad's Root Beer Co. v. Doc's Beverages, D.C., 94 F.Supp. 121, affirmed, 2 Cir., 193 F.2d 77.

A careful examination of the record fails to reveal any specific evidence to the effect that appellant has lost substantial business and profits as a result of appellee's unfair competition. The principal damage revealed by the testimony has consisted of inconvenience and disruption of office routine in processing misdirected inquiries. While some loss of business undoubtedly has occurred, it would not, under the circumstances, be fairly measured by appellee's profits, nor be revealed by an accounting. In our view, the injunction to be entered will satisfy the substantial equities of the case. See Champion Spark Plug Co. v. Sanders, 331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386.

We make one exception from the ruling just announced. Since we

have found appellee's acts to have been willful and calculated to trade upon appellant's good will, the latter is entitled to recover its actual and reasonable attorney's fees incurred in this litigation.[8]

The judgment is reversed and the cause is remanded for entry of judgment. The judgment shall make provision for actual and reasonable attorney's fees.

8. Aladdin Mfg. Co. v. Mantle Lamp Co., 7 Cir., 116 F.2d 708; Admiral Corp. v. Penco; 2 Cir., 203 F.2d 517; Keller Products, Inc. v. Rubber Linings Corp., 7 Cir., 213 F.2d 382, 47 A.L.R.2d 1108.