374 F.2d 717
 Archie SNIDER, individually and doing business as Snider Construction Co., Appellant,
v.
John M. ENGLAND, as Trustee of the Estate of Mahl Associates, Inc., a corporation, bankrupt, Appellee.
 No. 20981.
 United States Court of Appeals Ninth Circuit.
 March 1, 1967.
 
 John F. Taylor, Dinkelspiel & Dinkelspiel, San Francisco, Cal., for appellant.
 Henry Cohen, Shapro, Anixter & Aronson, Burlingame, Cal., for appellee.
 Before POPE, MERRILL and DUNIWAY, Circuit Judges.
 POPE, Circuit Judge.
 
 
 1
 This action was brought by the above named Trustee in Bankruptcy to set aside an alleged voidable preference in favor of the appellant. Mahl Associates, Inc., pursuant to its voluntary petition in bankruptcy, was adjudicated a bankrupt on January 31, 1962. On December 1, 1961, the bankrupt paid to the appellant, its creditor, sums aggregating $15,668.68. The court set aside the transfers, entering judgment against the appellant.
 
 
 2
 Upon this appeal appellant asserts that there was insufficient evidence to support the court's findings and judgment that on December 1, 1961, when the said payments were made, the bankrupt was insolvent; and that at that time, appellant had reasonable cause to believe that the bankrupt was insolvent. It is conceded that the other elements of a voidable preference were established.[1]
 
 
 3
 An examination of the record discloses that the findings here challenged are not clearly erroneous. We think that the evidence adequately supports them.
 
 
 4
 At the time the bankruptcy petition was filed, at the end of January, 1962, the bankrupt company had liabilities of $261,890.10 and assets of $65,234.27. The record warrants a conclusion that in this respect there was no substantial change in the status of the business between the date of the alleged preferential transfer and the date of the adjudication. As the trial court noted, such a situation permits a retrojection of the proven condition at the time of the adjudication to the date of the transfer.[2]
 
 
 5
 Mahl, president of the company, testified that as far back as September and October, 1961, the business was "then shakey. * * * It was defunct." Also, he testified, that between November, 1961, and the end of January, 1962, there was no substantial change in the asset-liability ratio.
 
 
 6
 As for the question whether the appellant had reasonable grounds for believing the bankrupt insolvent on December 1, 1961, the date of the transfer, the testimony was that in October, 1961, Mahl told appellant that he, Mahl (meaning his company) was unable to pay the debt owing, that "I was insolvent * * * and it had been suggested by my accountant and attorney to file a petition in bankruptcy."
 
 
 7
 This testimony, taken alone, would warrant a finding that appellant had reasonable cause to believe that the company was insolvent on December 1, 1961, the date of the transfer.
 
 
 8
 There was other evidence that conceivably could have warranted a contrary finding. Thus it was disclosed that during the year 1961, Mahl was seeking loans from various sources, and in connection therewith making representations that his company was doing well, and in a position to make substantial profits.[3]
 
 
 9
 Appellant, noting that these facts as to what Mahl told him, and when and what he did, were undisputed, argues that the trial court's key findings here are inferences drawn from basically undisputed facts, and hence this court is as able to draw its own inferences as was the trial court. Hence appellant argues that this court should hold that appellant did not have reasonable cause to believe the bankrupt company insolvent on the date of transfer. Appellant cites Mayo v. Pioneer Bank & Trust Company (5 cir.) 297 F.2d 392, 395.
 
 
 10
 But this court takes a different view of the application of Rule 52(a). In Lundgren v. Freeman, 9 cir., 307 F.2d 104, 115, we stated the rule in this Circuit was that the "clearly erroneous" test applies "even though it seems the basic facts are undisputed," (quoting from Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218). This, we noted, was because the finding in such a case is "based on the `fact-finding tribunal's experience with the mainsprings of human conduct.'"[4]
 
 
 11
 Appellant also assigns as error the court's rejection of certain offered evidence. Appellant sought to prove through the manager of a local bank that the bank had received, during the times here in question, inquiries concerning the financial condition of this company, and had given favorable responses. It was also sought to prove that another person seeking similar information had received favorable reports of Mahl's company. The court sustained the objections to these offers.
 
 
 12
 Appellant's first argument is that this evidence was admissible for the purpose of impeaching plaintiff's witnesses. This must be rejected, for a witness such as Mahl cannot be impeached by correspondence between other persons to which he was not a party. The other claim is that a reasonably diligent inquiry by appellant would have produced for him the same favorable responses that were stated in the rejected evidence. Such an argument is without point. The question here is not what might have been disclosed by inquiries of the character here described. The question is what did appellant have reasonable cause to believe or to inquire about in the light of the information which was actually received by him.
 
 
 13
 It is true that a creditor may not close his eyes in order to remain ignorant of the debtor's true condition; and the creditor is chargeable with notice of all facts which a reasonably diligent inquiry would have disclosed. I-T-E Circuit Breaker Company v. Holzman, 9 cir., 354 F.2d 102, 105. But this does not mean that appellant may bring in Banker A or Banker B to prove their high regard for Mahl's company in view of all the things calculated to put appellant on his guard or to require him to make reasonable inquiry here. The offered evidence was properly rejected.
 
 
 14
 The judgment is affirmed.
 
 
 
 Notes:
 
 
 [1]
 These were that this was (1) a transfer of the debtor's property (2) for the benefit of a creditor on account of an antecedent debt (3) within four months of bankruptcy and (4) the effect of which was to enable the creditor to obtain a greater percentage of his debt than other creditors of the same class
 
 
 [2]
 For a discussion of "retrojection", see 1 Collier, Bankruptcy § 1.19 [3]-[5] p. 125. The evidence problem is one of inferring a condition at an earlier time to be the same as that at a later time. "Where the condition is of such character that a brief lapse of time would not affect it materially, the subsequent existence of the condition may give rise to an inference that it previously existed." Allen v. Matson Navigation Company, 9 cir., 255 F.2d 273, 281
 
 
 [3]
 Mahl's testimony was that in July and August his company had a deficit of $20,000; yet the corporation filed with the Commissioner of Corporations of the State of California a financial statement of its condition on June 30, 1961, showing a net worth of $139,000. If such was Mahl's opinion of his company's financial condition at that time it could throw some doubt on whether he was actually contemplating bankruptcy in September or October, 1961. And if Mahl was thus optimistic about the company the question might be how appellant could be expected to believe it was insolvent on December 1, 1961. Mahl continued to seek loans from various persons throughout the year 1961. Obviously these persons were not told of the failing condition
 
 
 [4]
 Appellant argued to the lower court that the inconsistencies in Mahl's conduct were such that "his testimony is not to be trusted." What the trial judge did was to rely on his "experience with the mainsprings of human conduct", and notes in his opinion that Mahl "acted as an almost incurable optimist"; that he thought, mistakenly, that his problem was merely "a lack of working capital" and hence, under all the circumstances, appellant had reasonable cause to believe that the bankrupt was insolvent at the time of the transfer