Wilber H. FRIEND, an individual, and Friend Company, a corporation, Appellants,

v.

H. A. FRIEND AND COMPANY, Inc., Appellee.

Nos. 22489, 22489A.

United States Court of Appeals Ninth Circuit.

Sept. 12, 1969.

Rehearing Denied Nov. 3, 1969.

D. Gordon Angus (argued), and Robert M. Angus of Angus & Mon, Pasadena, Cal., for appellants.

John C. Brezina (argued), Joe C. Young and Roger H. Bruny, of Alberts, Brezina & Lund, Chicago, Ill., Harris, Kiech, Russell & Kern, Charles E. Wills, Los Angeles, Cal., for appellee.

Before BARNES and CARTER, Circuit Judges, and THOMPSON, District Judge.*

BARNES, Circuit Judge:

The first of the two cases brought by appellee and combined here on appeal, seeking redress for alleged unfair competition and trade-mark infringement, was initiated in the United States District Court for the Central District of California on June 17, 1964. Jurisdiction was based upon the Federal Trade-Mark Act of 1946, the Lanham Act, 15 U.S.C. § 1121 and upon 28 U.S.C. § 1338. Diversity jurisdiction, 28 U.S.C. § 1332, was also alleged. On March 16, 1966, while that case was still pending, plaintiff appellee filed the second suit here appealed, charging appellant with misrepresentation and false advertising. Lanham Act and diversity jurisdiction were invoked. Jurisdiction in this court for the combined appeal and cross-appeal is based upon 15 U.S.C. § 1121.

Appellee H. A. Friend & Co., Inc., an Illinois corporation (hereinafter H. A. Friend) traces its origin as a retail paper operation specializing in printed and engraved legal stationery to 1908.

---

* Hon. Bruce R. Thompson, United States District Judge, Reno, Nevada, sitting by designation.

H. A. Friend is a family corporation currently operated by the three youngest sons of its namesake and founder, now deceased. Until 1948, the oldest of the Friend sons, Wilber, the co-appellant [1] here, was an active partner, having become a full time employee of the firm in about 1930. Appellant left H. A. Friend as the result of a family dispute; Wilber's capital interest in the company was purchased by his father, and a new partnership with the same name was formed by the father and the remaining three sons. This partnership was incorporated in 1961.

The district court found that appellant told his father and brothers that he was leaving Illinois for Pasadena, California, where he planned to engage in the *wholesale* paper business under the name of Friend Paper Company (hereinafter Friend Paper). Friend Paper had been organized, but not incorporated, by H. A. Friend in the 1930's as a means of obtaining paper from H. A. Friend's suppliers at wholesale prices. Appellant ran Friend Paper from his office at H. A. Friend, using H. A. Friend's personnel. When appellant left H. A. Friend, the name of the wholesale operation was changed to Friend Paper Products Co.

Appellant did move to Pasadena. This action appears to be the one truthful aspect of the future plans he had outlined to his family. Appellant's business, which he titled Friend and Company (hereinafter Friend), did the same type of retail business as H. A. Friend.

This similarity in the names of the two companies was exploited vigorously by appellant. In 1955, appellant distributed a catalogue of Friend's products which described the Pasadena operation as the "Western Division" of Friend and Company. An asterisk appearing at the location of H. A. Friend in Illinois purported to locate the "General Offices" and the Western states on the map were shaded, a caption indicating they were "served from the Western Division, Pas-

adena, California." The catalogue was labeled "No. 47." 1908 plus 47 equals 1955, the year of publication. When a second catalogue appeared in 1964, it was titled "No. 56."

The catalogue's text described Friend as a company in business since 1908 and Wilber as manager of the Western Division since 1949. The district court found that "Barrister Bond," "Friends Bond," and "Banner Bond" were trade-marks and watermarks used by H. A. Friend long before 1948. Appellant's catalogue listed stationery under these names. The 1964 catalogue contained the same information. Between 1951 and 1953, appellant mailed letters to Western law firms announcing the opening of a "Western Division" which could save freight costs from the "East." Appellant's misrepresentation was not limited to indirection; one customer of H. A. Friend, for example, was informed that Friend would "get your die from our Zion plant."

The district court, characterizing appellant's conduct as "fraudulent" and appellant's testimony as "simply unbelievable," enjoined appellant's use of "Friend" as a trade name or trade-mark, except under limited circumstances, as well as appellant's insinuating any connection with H. A. Friend. Appellant was prohibited from using the trademarks "Banner," "Barrister Bond," "Bar Bonds" and "Friends." Appellant was also forbidden to misrepresent the cotton fibre content of his products. Damages for appellant were found in the following amounts: 1. for acts of unfair competition and trade-mark violation, $15,000; 2. for false description of merchandise, $20,000; 3. for attorneys' fees, $30,000.

Appellant challenges this judgment in its entirety and appellee cross-appeals, alleging the district court erred both in not awarding appellee appellant's profits stemming from unfair trade practices and in failing to enjoin completely ap-

---

1. Since Wilber Friend is the alter ego of Friend and Company, we use the term "appellant" to refer to the two interchangeably.

pellant's use of the word "Friend" in the retail paper trade.

We first consider appellant's twenty-one assignments of error. For convenience, we group them under five main headings.

■ We evaluate initially appellant's contention that appellant, not H. A. Friend, owned Friend Paper when it was doing business as a wholesaler in Illinois prior to 1948. Appellant argues that there is no "substantial evidence" to support the trial court's finding that H. A. Friend organized Friend Paper and points to his own testimony that he owned and operated Friend Paper for personal profit as unrefuted evidence negating the trial court's conclusion. Appellant's inference must be that if he, not H. A. Friend, owned Friend Paper, appellant somehow acquired trade name rights in "Friend."

In order for us to reverse the trial court's finding on this point, it is necessary for appellant to demonstrate that the finding is "clearly erroneous." Fed. R.Civ.P. 52(a). Paul Sachs Originals Co. v. Sachs, 325 F.2d 212, 214 (9th Cir. 1963). As the Supreme Court stated in Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 1200, 4 L.Ed.2d 1218 (1960), "'A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746." See Fleischer v. Commissioner of Internal Revenue, 403 F.2d 403, 406 (2d Cir. 1968); Waltham v. Netoco Theatres, Inc. v. Commissioner of Internal Revenue, 401 F.2d 333, 335 (1st Cir. 1968); Tennessee Foundry & Mach. Co. v. Commissioner of Internal Revenue, 399 F.2d 156, 157 (6th Cir. 1968). Appellant has failed to sustain this burden of proof. Against appellant's testimony we weigh, and find convincing, under the *Duberstein* standard, the evidence pro-

duced by appellee. For example, William Friend, appellee's corporate secretary and a partner in H. A. Friend in 1946–1949, testified that Friend Paper was "just a front" for buying paper for H. A. Friend and was not supposed to make a profit. C.T. at 529. The witness also testified that until the accounting at the time of the dissolution of the partnership in 1948, appellant was not known by his partners to be making a personal profit from Friend Paper. C.T. at 538. This testimony, coupled with the partnership agreement of 1941, which bound all partners to devote full time to the partnership business and prohibited activity detrimental to the partnership business, convinces us the district court did not err in its conclusion. Our judgment is reenforced by the fact that the crucial evidence here hinges on the credibility of the witnesses. "It is settled law, * * *, that the question of credibility is peculiarly for the trier of fact. An appellate tribunal will not redetermine the credibility of witnesses where, as here, the trial judge had the opportunity to observe their demeanor and to form a conclusion." Dresser Industries, Inc. v. Heraeus Engelhard Vacuum, Inc., 395 F.2d 457, 463 (3d Cir. 1968). See Graver Tank & Mfg. Co. v. Linde Air Products Co., 336 U.S. 271, 274–275, 69 S.Ct. 535, 93 L.Ed. 672 (1949).

Appellant's next two groups of assignments focus on injunctive relief awarded by the district court. Our discussion of these points is related to and dependent on our conclusion reached on appellant's laches argument, *infra.*

■ Under a caption of "unfair competition," the district court enjoined appellant from the use of the word "Friend" either as a trade name or in advertising, except in conjunction with certain disclaimers, and prohibited appellant from claiming affiliation with H. A. Friend. Appellant challenges this ruling, contending both that H. A. Friend abandoned the name and that appellant has a right to use his own name.

Appellant's first argument can perhaps most charitably be described as a

misstatement of the facts. The district court found what our reading of the record reveals, that appellees consented to appellant's use of the name Friend Paper Co. in the wholesale paper business. That use is not proscribed by the appealed order. It is reasoning that smacks of duplicity for appellant to argue that appellee's permission to use the name in a noncompetitive field constitutes an abandonment of its right to use the name of its firm in a competitive field. We summarily reject appellant's position.

 Appellant's second point has more merit: the law is reluctant to preclude an individual's business use of his own name when no attempt to confuse the public has been made. Crane Co. v. Crane Heating & Air Conditioning Co., 299 F.2d 577, 578 (6th Cir. 1962); Haviland & Co. v. Johann Haviland China Corp., 269 F.Supp. 928, 955 (S.D.N.Y. 1967). Here, however, we are faced with a second user who has deliberately, vigorously, and successfully confused purchasers. We find the district court's injunction to be entirely reasonable and appropriate. John P. Dant Distillery Co. v. Schenley Distillers, Inc., 297 F.2d 935 (6th Cir.), cert. dismissed 371 U.S. 802, 83 S.Ct. 14, 9 L.Ed.2d 47 (1962); Brooks Bros. v. Brooks Clothing of California, 69 F.Supp. 442 (S.D.Cal.1945) aff'd 158 F.2d 798 (9th Cir. 1947); John B. Stetson Co. v. Stephen L. Stetson Co., Ltd., 128 F.2d 981 (2d Cir. 1942).

Appellant's third general ground for challenge to the holding of the district court is directed at the court's findings regarding appellee's trade-marks. Appellant contends that the district court erred in finding H. A. Friend to be the exclusive owner of the trade-marks "Banner," "Barrister Bond," and "Friends" and in enjoining appellant from using these names. Appellant's argument is that although H. A. Friend has sold stationery marked "Friend," "Barrister Bond," and "Banner," such use does not result in ownership. Appellant states that others have "used" these marks, reasoning that such use indicates nonexclusive ownership by appellee.

The district court found appellee held a valid trade-mark in the word "Friends" and had a pending trade-mark application for "Banner," a mark appellee had been using "for many years." The mark "Barrister Bond," which appellee has used for more than forty years, was originally issued to appellee's supplier. The district court found the supplier had held the mark in trust for appellee until, in 1965, formally assigning it to appellee. Determining appellant to be an infringer, the district court enjoined appellant's use of any of these marks.

Appellant's argument here is a factual challenge to the validity of the district court's findings. This court is neither equipped, inclined or permitted to relitigate questions of fact. "[W]e may not substitute our judgment if conflicting inferences may be drawn from the established facts by reasonable men and the inferences drawn by the trial court are those which could have been drawn by reasonable men." Lundgren v. Freeman, 307 F.2d 104, 113 (9th Cir. 1962). See Snider v. England, 374 F.2d 717, 720 (9th Cir. 1967).

 For the reasons we outlined above, we find the district court was correct in restricting appellant's use of the trade-mark "Friends." "In an action for infringement of a protected trade-mark or name the test is that of confusing similarity." Baker v. Simmons Co., 307 F.2d 458, 461 (1st. Cir. 1962); Paul Sachs Originals, supra, 325 F.2d at 214. See Volkswagenwerk Aktiengesellschaft v. Church, 411 F.2d 350 (9th Cir. 1969); Smith v. Chanel, Inc., 402 F.2d 562, 563 (9th Cir. 1968). The likelihood of confusion is a matter to be determined by this court. Fleischmann Distilling Corp. v. Maier Brewing Co., 314 F.2d 149, 152 (9th Cir. 1963). In our judgment, that test is here more than amply satisfied. See Speedry Prods., Inc. v. Dri Mark Prods., Inc., 271 F.2d 646, 648 (2d Cir. 1959); Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc., 281 F.2d 755 (2d Cir. 1960). Cf.

Williams v. Kaag Mfgrs., Inc., 338 F.2d 949 (9th Cir. 1964).

The prohibition of appellant's use of "Banner" presents a more difficult case since appellee has used, but not registered, the mark. We begin by pointing out that "the basic premise [of trademark law is] that a trademark is not acquired by registration. The right to a trademark stems from prior appropriation and use." Haviland & Co. v. Johann Haviland China Corp., *supra,* 269 F. Supp. at 935. *Haviland* cites, at 935, Campbell Soup Co. v. Armour & Co., 175 F.2d 795 (3d Cir. 1949) for the proposition that, "* * * Federal registration does not create a trade-mark. The trade-mark comes from use, not registration, and the right to it is in the nature of a property right based on common law." In our judgment, "Banner" is a trade-mark. *See* Blisscraft of Hollywood v. United Plastics Co., 294 F.2d 694, 700 (2d Cir. 1961). We find appellee to have a right analogous to a common law property right in the mark "Banner."

> "It is generally said that exclusive right to use a mark belongs to the first who appropriates it and uses it in connection with a particular business." Sweetarts v. Sunline, Inc., 380 F.2d 923, 926 (8th Cir. 1967) (citations omitted). *See* Blanchard Importing & Dist. Co. v. Charles Gilman & Sons, Inc., 353 F.2d 400, 401 (1st Cir. 1965).

Clearly, appellee being the prior and long time user of the Banner mark, is to be preferred over appellant, a wilful infringer and entitled to equitable relief against him to prevent confusion in their competition for the market. We affirm the district court's granting of an injunction against appellant's use of the mark "Banner."

Appellant next asserts that the district court's issuing of an injunction prohibiting its use of "Barrister Bond" was error because appellee's supplier could not have assigned the mark to appellee since the supplier retained his business and good will. While the assignment may be void, since a trademark "cannot be assigned in gross and may only be transferred with a business to identify the merchandise of the owner," Dresser Indus., Inc. v. Heraeus Engelhard Vacuum, 395 F.2d 457, 464 (3d Cir. 1969), it is an issue which is not here controlling. Appellee, as the real party in interest, can seek equitable relief against an infringer of a "fanciful designation," used in a fictitious, arbitrary and fanciful manner, as distinguished from a geographical or descriptive term. The principles we have outlined, *supra,* are applicable here. An injunction is not an improper remedy. *See* National Lead Co. v. Wolfe, 223 F.2d 195, 205 (9th Cir. 1955). To give complete relief equity can enjoin the use of a name, even though an exclusive right to use it is not proved.

Two affirmative defenses are asserted by appellant. The first, which we dispose of summarily, is that appellant's business was built up in an area separate from and undeveloped by appellee and appellee cannot now complain of infringement. While the legal principle enunciated by appellant is valid, *see, e. g.,* Sweetarts v. Sunline, Inc., *supra,* 380 F.2d at 928, it must be supported by convincing evidence. Appellant has not met this burden. The district court found that in 1948 appellee was doing business in almost all the states west of the Rocky Mountains, and that appellee had a mailing list of 1500 potential customers in this area. These facts indicate appellant was active in the western market, and the confusion proved, which had generated among appellee's customers, *supra,* is objective proof of appellee's presence there. Appellant's argument is unpersuasive.

Appellant's second defense, laches, is not so readily rejected. The district court found that in 1957, Harley Friend, father of the litigants, received a letter from a Seattle law firm which informed him of appellant's duplicity. Although Harley Friend answered this letter, the district court found he took no affirma-

tive action and failed to notify his partners. The district court determined that this did not put appellee on notice; the first knowledge coming to appellee of appellant's activities recognized by the district court occurred in August of 1962. The first demand for termination of activities now litigated was sent to appellant in August, 1963.

We must initially determine whether 1957 or 1963 is the significant date. In our judgment, the district court erred in focusing on the 1962 confrontation. Well established concepts of partnership doctrine impute the knowledge and actions of one partner to all others. *See, e. g.,* Bushman Const. Co. v. Air Force Academy Housing, Inc., 327 F.2d 481 (10th Cir. 1964); Stork Restaurant v. Sahati, 166 F.2d 348 (9th Cir. 1948); Hartford Acc. & Indem. Co. v. Hartley, 275 F.Supp. 610 (M.D.Ga.1967), aff'd 389 F.2d 91 (5th Cir. 1968). Appellee points to Harvey Friend's age and ill health as reasons explaining why his partners were not informed and argue this as a reason for postponing the measuring date for laches purposes. This is unpersuasive since appellees, by remaining in partnership with Harvey Friend and permitting him to act for the partnership—as he did here—are foreclosed from now disclaiming his actions. Nor can appellee find comfort in our holding in Whitman v. Walt Disney Prod's, Inc., 263 F.2d 229 (1958) since the ill health we mentioned there as a possible exculpating feature focused on an individual's delay in initiating suit as opposed to his informing his partners— an act not here at issue because of the presumption discussed above.

We therefore conclude that the delay of six years, 1957–1963, is the length of time the trial court should have considered in evaluating whether or not appellees are affected by the doctrine of laches. In our judgment, the trial court's error in pinpointing appellee's reception of notice is harmless error because, as we stated in *Disney, supra,* at 231:

"Mere passage of time cannot constitute laches, but if the passage of time can be shown to have lulled defendant into a false sense of security, and the defendant acts in reliance thereon, laches may, in the discretion of the trial court, be found."

Our examination of the record does not reveal the requisite reliance by appellant necessary to begin the running of a time period necessary for a bar by reason of laches. Appellant's unlawful conduct was continuous in nature and any incident can thus provide the foundation for appellee's suit; appellee is not precluded from a remedy by the mere lapse of six years from the acquiring of notice to the initiating of suit.

Having resolved the laches question in appellee's favor, we turn now to the issue of damages. We first evaluate and ratify the trial judge's awards of $15,000 for unfair competition and trade-mark violation and $20,000 for false description of merchandise. The $15,000 judgment, made under 15 U.S.C. § 1117, is not excessive; measured by the extremely wide discretion with which the trial court is empowered to act, we find it to be a proper award. The basis for the $20,000 judgment is 15 U.S.C. § 1125(a). The trial judge pointed out that:

"of much greater concern to the plaintiff from the standpoint of damage, is the likelihood that in future years people who have bought stationery from the defendants will become aware of its poor quality and will quietly determine never again to purchase 'Friend's' papers. Because of the manner in which the defendants have fraudulently linked their own operation with that of the plaintiff, it is impossible to determine the full extent to which the false descriptions herein concerned have damaged the plaintiff already and will cause further injury in the future."

The trial court concluded that although the full measure of damage could not be

534

precisely shown, the appellee had been injured in the amount of $20,000. We do not find this approach to be erroneous and affirm the action of the trial court.

The final award made by the trial court and challenged by appellant is $30,000 for attorneys' fees "[i]nasmuch as the Court has found the defendants' acts to have been wilful and calculated to trade upon the plaintiff's goodwill." R.T. at 478. Had the trial court relied upon the Lanham Act for this award we would agree with the appellant that the court had erred. This issue was considered by this court in Maier Brewing Co. v. Fleischmann Distilling Corp., 359 F.2d 156 (en banc 1966) where we concluded that the concept "the costs of the action" referred to in the Lanham Act's provision for recovery, *supra,* does not include attorneys' fees. Our ruling was affirmed by the Supreme Court. Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967).

However, the district court in the present case relied upon National Van Lines, Inc. v. Dean, 237 F.2d 688 (9th Cir. 1956). The cause of action there was predicated on a state statute. The court in *Dean,* as here, determined the infringer's conduct to have been wilful. The narrow holding of the *Dean* case, then, is that to the extent a plaintiff has a state given cause of action and providing state law does not prohibit attorneys' fees, the awarding of attorneys' fees is permissible. California does provide appellee with such a remedy. Cal. Bus. & Prof.Code, § 17082. *See* High Fidelity Recordings, Inc. v. Audio Fidelity, Inc., 305 F.2d 86 (1962). The action of the district court in awarding attorneys' fees was thus correct.

Lastly, appellant contends that the district court erred in prohibiting him from selling stationery of a different quality than that advertised. Since this is obviously an illegal act, we fail to understand how its prohibition could have been error.

We now consider the two cross-appeal claims made by appellee in its cross-appeal. We first evaluate the contention that the district court erred by not completely enjoining appellant's use of the name "Friend" for retail purposes. As we noted above, the trial court restricted appellant's use of his own name for sales to consumers; appellant was forbidden to employ "Friend" as a trade name unless 1. it is coupled with his first name, Wilber, in letters of equal size, and 2. accompanied by the parenthetical "Not affiliated with H. A. Friend and Company of Zion, Illinois." Additionally, appellant was enjoined from using "Friend" as a trademark or in advertising, unless it is coupled with "Wilber."

We find these restrictions to be a judicious balancing of the countervailing interests of protecting an individual's use of his name and the avoiding of confusion. See discussion and cases cited, *supra.* We find no error here.

Appellee secondly urges that the district court erred in merely awarding compensatory damages and attorneys' fees. Appellee contends it is entitled to an accounting of appellant's profits resulting from trade-mark infringement and unfair competition.

Section 35 of the Lanham Act, 15 U.S.C. § 1117, provides the remedy appellee requests. However, as we stated in Maier Brewing Co. v. Fleischmann Distilling Corp., 390 F.2d 117, 120 (9th Cir. 1968), this remedy is not available as a matter of right. In that case we considered the function of the Lanham Act and the conditions where the awarding of an offender's profits would be appropriate. We concluded at 123 that:

"It would seem fairly evident that the purposes of the Lanham Act can be accomplished by making acts of deliberate trade-mark infringement unprofitable. In the case where there is direct competition between the parties, this can be accomplished by

an accounting of profits based on the rationale of a returning of diverted profits. In those cases where there is infringement, but no direct competition, this can be accomplished by the use of an accounting of profits based on unjust enrichment rationale. Such an approach to the granting of accountings of profits would, by removing the motive for infringements, have the effect of deterring future infringements."

Because this is a case where the parties were in direct competition, and since the appellee, subject to our discussion, *supra,* has been awarded damages for lost profits, it does not appear the district court erred in denying an accounting of appellant's profits to appellee.

The judgment of the trial court is affirmed in all respects, in each case.