UNITED STATES of America, Plaintiff and Appellant,

v.

ONE TWIN ENGINE BEECH AIRPLANE, FAA REG. NO. N–9826Z, SERIAL NO. AF–305, its inventory, equipment, tools, and accessories, Defendant,

Sherman Marshall Ellison, Robert Nelson Paris, Claimants and Appellees.

No. 74–3256.

United States Court of Appeals, Ninth Circuit.

March 15, 1976.

As Amended on Denial of Rehearing April 23, 1976.

Stephen J. Peterson, Asst. U. S. Atty. (argued), Los Angeles, Cal., for plaintiff-appellant.

Geoffrey Bogeaus (argued), of Ellison, Weitzman, Litwack & Chier, Beverly Hills, Cal., for claimants-appellees.

## OPINION

Before GOODWIN and SNEED, Circuit Judges, and JAMESON,* District Judge.

PER CURIAM:

In this forfeiture proceeding, the government appeals the district court's holding that the government did not establish probable cause to believe that the subject airplane was used in a marijuana smuggling operation. We agree with the government, and reverse.

The initial proceeding was instituted under 19 U.S.C. § 1595a(a), which empowers the government to forfeit vehicles used to evade customs duties, and 21 U.S.C. § 881, which empowers the government to forfeit vehicles used to import controlled substances.

■ Unlike most civil and criminal proceedings, the burden of proof is on the "accused" owner or possessor, provided that the government first make a preliminary showing of probable cause to believe that the vehicle was used in the smuggling operation. 19 U.S.C. § 1615. The district court held that the evidence adduced by the government was insufficient to support a conclusion that such probable cause existed.

■ Our first question involves the standard of review for forfeiture cases. Fed.R.Civ.P. 52 compels us to affirm findings of fact unless clearly erroneous, and this circuit has extended that standard of review to factual inferences derived from

---

* The Honorable William J. Jameson, United States District Judge for the District of Montana, sitting by designation.

basic facts. *Collman v. Commissioner of Internal Revenue,* 511 F.2d 1263, 1267 (9th Cir. 1975); *Rivas v. Jefferson,* 412 F.2d 769 (9th Cir. 1969); *Snider v. England,* 374 F.2d 717 (9th Cir. 1967); *Lundgren v. Freeman,* 307 F.2d 104 (9th Cir. 1962). Deference to the determinations of the fact-finder has been justified because the fact-finder can best observe the demeanor of witnesses and the nuances of the evidence. However, the selection and application of a rule of law to the established facts and to reasonable inferences enjoys no such deference; the trial court's "conclusions of law" stand or fall according to legal rules. *See,* 5A J. Moore, Federal Practice ¶ 52.03[2] (2d ed. 1975); *Lundgren v. Freeman,* 307 F.2d at 115; 4 K. Davis, Administrative Law Treatise §§ 30.01 *et seq.*

Whether the existence of probable cause is a "factual inference" or a "conclusion of law" depends, in a given case, upon the historical facts measured by a "legal" rule. Probable cause is defined as facts and circumstances which would lead (by inferences) a prudent person to believe that a crime was committed and that the subject of the investigation was connected with the crime. From the "raw data", the magistrate infers, directly or through successive inferences, that criminal activity is or is not connected with the subject of the inquiry. Probable cause is grounded on the prudent person's informed evaluation of factual probabilities. *Brinegar v. United States,* 338 U.S. 160, 175–176, 69 S.Ct. 1302, 1310–1311, 93 L.Ed. 1879, 1890 (1949). That is, the application of the legal standard of probable cause directs the court to make inferences.

At some point in the process of abstracting "ultimate facts" from "basic facts", the trial court crosses the line from making findings of fact to making conclusions of law. 2 K. Davis, Administrative Law Treatise, § 16.06. Definition of the demarcation line should be made pragmatically: if the inferences depend on the credibility of the witnesses or the persuasiveness of the evidence, the trier of fact is said to have made findings of fact; if not, the facts are relatively free from doubt and

their consequences call for a conclusion of law. In reviewing determinations of probable cause in a criminal setting, the Supreme Court has indicated that it (and presumably other appellate courts) should not hesitate to re-evaluate the primary evidence:

" * * * While this court does not sit as in *nisi prius* to appraise contradictory factual questions, it will, where necessary to the determination of constitutional rights, make an independent examination of the facts, the findings, and the record so that it can determine for itself whether in the decision as to reasonableness the fundamental—i. e., constitutional—criteria established by this Court have been respected. The States are not thereby precluded from developing workable rules governing arrests, searches and seizures to meet 'the practical demands of effective criminal investigation and law enforcement' in the States, provided that those rules do not violate the constitutional proscription of unreasonable searches and seizures and the concomitant command that evidence so seized is inadmissible against one who has standing to complain. *See Jones v. United States,* 362 U.S. 257 [80 S.Ct. 725, 4 L.Ed.2d 697] (1960). Such a standard implies no derogation of uniformity in applying federal constitutional guarantees but is only recognition that conditions and circumstances vary just as do investigative and enforcement techniques." *Ker v. California,* 374 U.S. 23, at 34, 83 S.Ct. 1623, at 1630, 10 L.Ed.2d 726 (1963), *quoted in Beck v. Ohio,* 379 U.S. 89, 92, 85 S.Ct. 223, 226, 13 L.Ed.2d 142, 145 (1964).

As a matter of routine practice, this circuit recites and evaluates primary evidence whenever reviewing a question of probable cause in a criminal case. *E. g., Chin Kay v. United States,* 311 F.2d 317 (9th Cir. 1962); *United States v. McLaughlin,* 525 F.2d 517, 520–21 (9th Cir. 1975). We have granted some deference in favor of upholding an issuance of a warrant based on probable cause, *Gabriel v. United States,* 366 F.2d 726, 728 (9th Cir. 1966), but nothing like a "clearly erroneous" standard of review.

■ While we will defer to findings of basic facts, especially those depending on the credibility of witnesses and the subtleties of the evidence, we are required to review the determination of probable cause in a forfeiture proceeding as an application of a rule of law.

Given this scope of review, we turn to the basic facts: On the morning of September 25, 1972, the United States Consul in Mazatlan, Mexico received a telephone call from an informer who "had a working relationship" with the consul. The informer reported that he had witnessed an airplane, registration number N9826Z, land on a nearby semideserted road, take on some "packages" (which the informer thought to be marijuana) and then take off. Armed men, the informer said, blockaded the road until the plane could accept its cargo and depart. The consul alerted the drug enforcement authorities, who, in turn, notified border agents and local police throughout Southern California, especially Kern County, the residence of the plane's registered owner, Mr. Paris. The next day, police arrested Paris and found 1394 pounds of marijuana in his house and car. They also found 35 white duffel bags. In Paris's pocket, police found a note saying "45 bags, 1391 #" and some Mexican currency. The marijuana was packaged in "red and green butcher paper [of] the type that is normally found on the marijuana coming out of Mexico." Upon questioning, Paris refused to disclose the whereabouts of his airplane.

About 16 days later, the police found the airplane at Palm Springs Airport. It matched the description given by the Mexican informer. An expert testified that a plane of this type could handle a 1400–1500 pound cargo payload. A search of the plane at the time it was first discovered revealed some marijuana debris and seeds.

Two months before the arrest of Paris, a federal aviation inspector had reported his suspicions about Paris's airplane to the drug enforcement authorities. During an inspection in Fresno, the inspector had noted straw in the aircraft cabin and Paris said that he had been hauling sheep from Mexico to Oregon: the improbability of that story[1] aroused the inspector's suspicions, particularly in light of his alleged knowledge that Paris had been "landing in remote areas of Ventura and Kern Counties." The inspector had told the drug enforcement agents about the Fresno inspection and his skepticism about the sheep story.

Another agent of the DEA reported that one of his informants had seen Paris several times with large quantities of marijuana and money, and that Paris claimed that he fetched marijuana from Mexico once a week.

■ On these facts, we doubt that any magistrate in the United States would refuse either an arrest warrant or a search warrant. There was probable cause to believe that the airplane was used to facilitate the transportation of marijuana or to smuggle it into the United States.

Claimants assert that the hearsay statements of the Mexican informer—the most devastating evidence of smuggling—should not be admitted because the informer was "untested" and there was no "corroboration". Even if this were the rule (and we expressly reserve the question), the informer's report to the consul was well corroborated. The report was singularly specific. It was filled with detail, including the registration number of the plane. The report was not the sort of conclusory hearsay which the Supreme Court condemned in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). While the informer was "untested" in other criminal investigations, his past relationships with the consul and interviews with the DEA indicate reliability. The informer's belief that the "packages" contained marijuana was reasonable in light of the armed guards, the remote road, and notorious marijuana farms in the region. The marijuana, note, and currency seized during Paris's arrest on state charges all indicated a fresh

---

1. 21 U.S.C. § 103 makes it unlawful to import cattle, sheep, or swine except through a quarantine port designated by the Secretary of Agriculture.

**1110**

Mexican connection. Furthermore, Paris, at the time of his arrest, was evasive about the location of the plane.

 We must not forget that the government must show only probable cause, not a *prima facie* case. *Ted's Motors v. United States,* 217 F.2d 777 (8th Cir. 1954). The burden of proof is on the party claiming the property. He was free to come forward to explain where the plane actually was, if not in Mexico, or tell what its cargo was, if not marijuana.

The judgment of the district court is vacated and the cause is remanded for further proceedings without prejudice to the rights of either party to put on additional evidence or to raise new questions of law.