**ARCHITECTURAL MODELS, INC., a California Corporation, Plaintiff,**

v.

**Nils C. NEKLASON and Donald Nusbaum, doing business as Scale Models Unlimited, Defendants.**

**Civ. A. No. 42812.**

United States District Court
N. D. California.

Feb. 24, 1967.

Naylor & Neal, Jas. M. Naylor, Frank A. Neal, Karl A. Limbach, John K. Uilkema, San Francisco, Cal., for plaintiff.

Harvey G. Lowhurst, Palo Alto, Cal., Gregg & Stidham, Edward B. Gregg, San Francisco, Cal., for defendants.

## MEMORANDUM OF DECISION AND ORDER

GEORGE B. HARRIS, Chief Judge.

This suit involves the validity and alleged infringement of U. S. Patent No. 3,137,209, a device for making topographical models. It is a combination patent involving some 14 separate claims, four of which are being sued upon by the plaintiff, those claims being Nos. 4, 5, 11 and 14. The plaintiff also charges the defendants, in a separate cause of action, with appropriation of a trade secret.

The defendants have denied infringement and challenged the validity of the patent on the grounds of prior art and obviousness, faulty inventorship, prior public use and failure of the plaintiff to comply with formal statutory requirements. Misuse is also asserted as a defense to the patent infringement claim. Defendants have filed two counterclaims. The first is for declaratory judgment that the patent sued upon is invalid, to include all 14 claims, and the second charges the plaintiff with unfair competition.

## REGARDING THE ALLEGED INFRINGEMENT, WITH PARTICULAR REFERENCE TO CLAIMS 4, 5, 11 and 14:

These four claims, of the 14 encompassed by the patent, are the only ones to which the infringement suit is directed and the only ones about which plaintiff has presented evidence. It follows then that the remaining specifications are not in issue as to the infringement suit.

Mindful of the advice of the United States Supreme Court that *usually* the better practice is to inquire fully into the validity of a patent, Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, 330, 65 S.Ct. 1143, 89 L.Ed. 1644 (1944), this court concludes that the circumstances and factual background of the case dictate a disposition on the ground of non-infringement without deciding the question of validity of the patent.

The above statement in *Sinclair* in the words of Judge Learned Hand "was certainly not put in the form of a peremptory direction, but rather of a cautionary admonition, to be followed when that is the more convenient course * * *. There are good reasons for allowing some latitude of choice. A decision resting upon non-infringement is generally much more secure than one on invalidity, * * *. That issue is as fugitive, impalpable, wayward, and vague a phantom as exists in the whole paraphernalia of legal concepts. * * * A declaration of invalidity may therefore prove an *ignis fatuus*, as fictitious a security to those who wish to infringe the claim, as a declaration of validity may be a fictitious menace." Harries v. Air King Products Co., 183 F.2d 158, 162, 163 (2nd Cir. 1950). See also, Electrical Fittings Corp. v. Thomas & Betts Co., 307 U.S. 241, 59 S.Ct. 860, 83 L.Ed. 1263 (1938); Altvater v. Freeman, 319 U.S. 359, 63 S.Ct. 1115, 87 L.Ed. 1450 (1942); Cover v. Schwartz, 133 F.2d 541 (2nd Cir. 1943); Lockwood v. Langendorf, 324 F.2d 82, 91 (9th Cir. 1963).

Claims 4 and 5 define in substance the frame used to support the material, a table adapted to support a reverse print of a topographical map, and a free moving tool carrier with an electric motor mounted thereon. These claims were at first rejected in the patent office because of the Shaver patent, but were amended to incorporate the use of a reverse print as a distinguishing feature. Based upon this amendment, the claims were approved.

Defendants do not employ such a reverse print. Instead, they use a light table and a rightside print. However, it is plaintiff's contention that the accused machine functions on the print in exactly the same way plaintiff's machine functions on a reverse print, that is, either the same result is achieved by a different means, or both processes are the same or substantially the equivalent

of each other. Both procedures, in effect, are adopted to support a reverse print.

This was not the argument made to the patent office. There, plaintiff urged that the use of a reverse print distinguished its device from the Shaver reference. "If a man skilled in the art did not conceive of applicants' method of using a reverse print, he would have to conceive of some other unobvious modification of Shaver, such as making the table 14 and map 10 transparent, in order to permit the Woody structure to be used in the Shaver apparatus." Defs'. Exh. 2, pp. 61, 62, 63 of the file wrapper.

 Plaintiff therefore takes inconsistent positions. To the patent office, it was claimed that the use of a reverse print was critical; to the court, it is suggested that the use of a reverse print is either not essential or that it should be given a broad construction. " * * * a party cannot take inconsistent positions concerning the same subject matter in different transactions. Hence, a patentee cannot argue a narrow construction of his claims when speaking to the Patent Office and then argue a broad construction to ensnare an infringer * * *. A claim, having been narrowed in order to obtain allowance thereof by distinguishing it from a prior patent cited by the Patent Office, cannot be broadened in an infringement suit to make the claim read on a structure identical with that of such prior patent." Deller's Walker on Patent, Volume 4, § 234.

The Ninth Circuit in Lockwood v. Langendorf, 9 Cir., 324 F.2d 82, 88 (1963), supports this position: "Also where, as in this case, an applicant has been required to narrow his claim in order to distinguish it, any contention of the applicant that such claim is not essential or that it is infringed by an equivalent in the accused article, should be considered with care and subjected to a narrow rather than a liberal construction."

██ Claim 11 is directed solely at the definition of vertical adjustment in the router assembly. It is limited to an internally threaded sleeve and an electric motor threadedly received in said sleeve. Defendants do not however use this exact method. Rather, they employ a rack and pinion to accomplish a vertical sliding motion. In order then to establish infringement, this claim must be given the benefit of the doctrine of equivalents. In a combination patent such as this, every element of the claim or its functional equivalent must be found in the accused device. Q-Tips v. Johnson & Johnson, 207 F.2d 509 (3rd Cir. 1953).

██ In this regard it should be noted that plaintiff has never incorporated the principle of vertical adjustment in the router assembly in a working model. The existence of plaintiff's device does not extend beyond a paper sketch. It is no more than a paper patent, and its claims should be given the most meager range of equivalents. Richard Irvin & Co., Inc. v. Westinghouse Air Brake Co., et al., 121 F.2d 429 (2nd Circuit 1941). A paper patent must be strictly construed. Modern Prod. Supply Co. v. Drachenberg, 152 F.2d 203 (6th Cir. 1945) cert. den. 327 U.S. 806, 66 S.Ct. 964, 90 L.Ed. 1030 (1946). Further, in an infringement suit, the issue of paper patent may appear either as a challenge to validity or as a legal reason for restricting the scope of the patent. General Motors Corp. v. Kesling, 164 F.2d 824 (8th Cir. 1947), cert. den. 333 U.S. 855, 68 S.Ct. 732, 92 L.Ed. 1135 (1948).

██ It is therefore possible for the court to rule that claim 11 is not infringed by defendants' machine by narrowly construing the claim and its equivalents. "The mere fact that the accused article performs the same function and achieves the same result as the patented article does not necessarily establish infringement unless it can be found that this is accomplished in substantially the same way and where, as in this case, the art is fairly crowded and the main elements of the patent are found or indicted in prior art, this issue should be determined narrowly rather than lib-

erally. If in fact, not merely colorably, the accused article departs from the teaching of the patent in the means by which it achieves the result there is not infringement." Lockwood v. Langendorf, supra.

 Claim 14 also defines vertical adjustment but is broader in scope than claim 11. " * * * adjustable connecting means interconnecting said router and said body for adjustably positioning said router at a plurality of front positions along said axis * * * " If this claim were literally construed, there appears little doubt that it would read upon the accused machine, since any method employed for vertical adjustment would be preempted by the above definition. However, 35 U.S.C.A. § 112 states: "An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." As such, we must look back to claim 11 to determine what means are employed by plaintiff to achieve vertical adjustment, the specific method not having been defined by claim 14.

Any reference back to claim 11 would again involve a discussion of the doctrine of equivalents and the law appurtenant to paper patents. In both bases the result should be the same, i. e., the accused device does not infringe upon plaintiff's patent.

### THE ALLEGED TRADE SECRET

 Plaintiff's second cause of action which relates to unfair competition alleges the appropriation of a trade secret, i. e., the concept of putting the sole vertical adjustment in the router assembly. Jurisdiction of the court is based upon the provisions of 28 U.S.C.A. § 1338(b). It is plaintiff's position that the defendants learned of this trade secret during their employment by plaintiff and that they appropriated and incorporated this concept of vertical adjust-

ment in the router assembly into a similar apparatus with the intention of competing with plaintiff.

The evidence adduced at trial fails to support this contention. The concept of putting the vertical adjustment into the router by using a threaded sleeve and motor was admittedly conceived by Virginia Green during a conference on April 25, 1961, with her attorney who drew a sketch embodying this principle.

No evidence was presented which would establish that either defendant had access to or in fact saw the drawing. Rather, the plaintiffs rely in total upon the testimony of one Wold that Neklason had discussed this concept with him while in the employ of plaintiff, but at a time some time before the aforementioned conference. The testimony at best was vague. Neklason on the other hand stated he could not recall any such conversation.

It is interesting to note that defendant Nusbaum was admittedly not involved in this alleged appropriation, but it was he, not defendant Neklason, who suggested the idea of putting the sole accurate vertical adjustment into the defendants' router. (6 Tr. 711, 712)

### COUNTERCLAIM FOR UNFAIR COMPETITION

Defendant's cause of action arises out of statements made by Leila Johnston to certain persons and the San Francisco Redevelopment Agency that defendants had appropriated plaintiff's trade secrets and infringed its patent. As a result of these statements defendants alleged they withdrew their bid on a Redevelopment project even though it was the low bid. The profit that would have been made on this project is the sum total of the prayer for damages. Moreover, defendants have not attempted to establish that they have been in any way injured in their trade or profession by the statements made to others than the San Francisco Redevelopment Agency.

 Since a qualified privilege exists to charge one with patent infringement even though that claim may later

prove erroneous, defendants must prove lack of good faith by the speaker in the truth of the utterance and malice. In neither of these respects have the defendants carried their burden of proof.

## COUNTERCLAIM FOR DECLARATORY JUDGMENT

As previously noted, the plaintiff has charged the defendant with infringement of only four of the fourteen claims that comprise the patent. Defendants however pursuant to the provisions of 28 U.S.C.A. § 2201 request a determination of validity as to all claims. Plaintiffs have questioned the power of the court to pass upon the merits of more than the four cited claims.

 The finding of non-infringement forecloses any need to discuss the merits of the defenses related to alleged invalidity as to any and all claims. "To hold a patent valid if it is not infringed is to decide a hypothetical case." Altvater v. Freeman, 319 U.S. 359, 363, 63 S.Ct. 1115, 1117, 87 L.Ed. 1450 (1942).

 Moreover, the court need not decide the issue of whether or not jurisdiction exists under 28 U.S.C.A. § 2201 to pass upon the validity of the ten non-asserted claims. In this regard, two clearly established principles must be kept in mind. First, a patent is presumed to be valid. 35 U.S.C.A. § 282; secondly, even where jurisdiction to render a declaratory judgment exists, a court may, in the exercise of its sound discretion, refuse to render the decision sought if it is unnecessary to a practical solution of the controversy. Moore's Federal Practice, § 57.20.

Accordingly, the court finds as follows:

## FINDINGS OF FACT
### Patent Infringement

1. Architectural Models, Inc. is a California corporation having its principal place of business in San Francisco, California.

2. Nils C. Neklason is an individual residing in East Palo Alto, California.

3. Donald Nusbaum is an individual residing in Palo Alto, California.

4. Nils C. Neklason and Donald Nusbaum are doing business as partners under the name and style Scale Models Unlimited in East Palo Alto, California.

5. This is a suit for patent infringement and for appropriation by defendants of an alleged trade secret of plaintiff. Defendants deny infringement and assert invalidity on various grounds including lack of patentable invention (35 U.S.C. § 103); public use and/or sale of the invention more than one year before the patent application was filed (35 U.S.C. § 102(b)); and failure of the claims to point out the invention (35 U.S.C. § 112). Defendants also assert misuse of plaintiff's patent as a defense and they counterclaim for unfair competition by plaintiff arising out of facts generally similar to the facts upon which misuse is predicated.

6. Plaintiff sues only on Claims 4, 5, 11 and 14 of its patent. Defendants assert and plaintiff denies that the other claims of the patent (Claims 1, 2, 3, 6–10, 12 and 13) are at issue with respect to their validity.

7. The only claims asserted by plaintiff are claims 4, 5, 11 and 14.

8. Claims 4 and 5 are to the apparatus as a whole, including the framework which supports a contour map on a table below and a workpiece above, as well as the router assembly. Each of these claims states that the map-supporting table is "adapted to support a reverse print of a topographical map."

9. Literally, any table, including the lower table of defendants' apparatus, is adapted to support a reverse print of a topographical map.

10. However, this feature—"adapted to support a reverse print of a topographical map"—was introduced by amendment to overcome a ground of rejection and it was emphasized during prosecution of the patent application in the Patent Office as a feature which distinguishes the invention from the cited prior art. To give Claims 4 and 5 a

broader interpretation and, in effect, to treat the language "adapted to support a reverse print of a topographical map" as meaningless surplusage would be to give these claims a broader scope than represented to and understood by the Patent Office and would recapture subject matter that was relinquished in the Patent Office in order to obtain allowance of claims. More particularly, to give Claims 4 and 5 a scope which would cover defendants' apparatus, in which there is a translucent table equipped with lights beneath (such being referred to as a "light table"), and which makes it possible to use a positive or right reading map with its attendant advantages over the use of a reverse print, would be to give Claims 4 and 5 a scope broader than was intended by the Patent Office and broader than was represented by the plaintiff to the Patent Office. Such narrow construction of Claims 4 and 5 (as excluding defendants' light table and use of a right reading print) is reinforced by the following argument presented by plaintiff to the Patent Office (see the file of plaintiff's patent, Defs'. Exh. 2, page 63):

> "Thus, the modification of Shaver to incorporate opposed tool and stylus from Woody would require the conception of a method of use of the apparatus which would not be obvious to a man skilled in the Art. If a man skilled in the art did not conceive of applicants' method of using a reverse print, he would have to conceive of some other unobvious modification of Shaver, such as making the table 14 and map 10 transparent, in order to permit the Woody structure to be used in the Shaver apparatus."

The references "Shaver" and "Woody" in the above excerpt are to two patents cited by the Patent Examiner and which plaintiff sought to overcome by arguments including the argument quoted above.

11. Claim 11 is directed to the adjustable router assembly itself, apart from the rest of the machine. This claim is limited in its wording to (a) an internally threaded sleeve, such as the sleeve 24 in Figure 2 of the patent and (b) an externally threaded motor which is threaded into the sleeve as shown at 28 in Figure 2, such being the means for effecting vertical adjustment by screwing the motor down into or up out of the sleeve.

12. Defendants' apparatus does not employ this construction. Instead, defendants' router assembly employs a rack and pinion and the motor is moved up and down by sliding it within an outer sleeve. It is not moved by screwing it down into or up out of the sleeve.

13. In view of the fact that the apparatus of Figure 2 was never built, tested or used by plaintiff, the rack and pinion construction of defendants' machine is not the equivalent of the screw-in type of construction of Figure 2 and of Claim 11 of the patent.

14. Claim 14 is broader in terminology than Claim 11 because, instead of reciting a threaded sleeve and a threaded motor, it recites "adjustable connecting means interconnecting said motor and said body for adjustably positioning said router," etc. However, viewed in the light of 35 U.S.C. § 112, third paragraph, which reads as follows:

> "An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."

Claim 14 must be limited to the Figure 2 structure and equivalents. Having found that the rack and pinion construction of defendants is not the equivalent of the threaded, screw-in type of structure of Figure 2, it follows that Claim 14 is no broader in scope than Claim 11 and that defendants do not employ the structure of Claim 14.

### The Alleged Trade Secret:

15. Defendant Neklason was employed by Plaintiff and its partnership

predecessor from May, 1958 to September 28, 1962.

16. Defendant Nusbaum was employed by Plaintiff from November 1, 1961 to September 28, 1962.

17. Since about October 1, 1962, Defendants Neklason and Nusbaum have been doing business under the partnership name SCALE MODELS UNLIMITED at 2534 Puglas Avenue, East Palo Alto, California.

18. Plaintiff asserts that it possessed a trade secret during the employment of defendants by plaintiff, such trade secret arising out of and being embodied in plaintiff's Exh. O, which is a sketch made on or about April 25, 1961 and which shows two embodiments of the idea of an adjustable router assembly including the screw-in type of router assembly shown in Figure 2 of the patent.

19. Plaintiff contends that the defendant Neklason (the defendant Nusbaum being exculpated altogether) heard or learned of this alleged trade secret during the period of his employment by plaintiff and appropriated it to the use of defendants after the defendants left the employ of plaintiff, set up their own competing business and decided to build a model cutting machine.

20. Defendants' router assembly employs the broad concept of a vertically adjustable router wherein the vertical adjustment in proceeding from one contour level to another is carried out by manipulating the router assembly rather than by manipulating the main frame of the machine. However, defendants' router assembly, which is shown in Figure 1 of its own patent No. 3,224,339, Defs'. Exh. 8, and which was exhibited in court at the trial as Defs'. Exh. 25, does not have a screw-in type of adjustment as in Figure 2 of the patent. Instead, it employs a rack and pinion adjustment whereby the motor is caused to slide up and down within a sleeve without rotating.

21. Plaintiff did not use and never has used its alleged trade secret in any form whatsoever. In selecting a design for its second machine in 1962–63, plaintiff considered but rejected the use of its alleged trade secret. Instead, plaintiff substantially duplicated the design of its first machine employing jack screws, sprockets, a chain and a hand wheel.

22. Plaintiff offered no evidence that it came into possession of any trade secret pertinent to this cause until on or about April 25, 1961. The only credible evidence on this point is that plaintiff first acquired knowledge and possession of the alleged trade secret on or about April 25, 1961, at which time a sketch, Pl's. Exh. O, was prepared.

23. There is no evidence that either of the defendants saw or had access to Pl's. Exh. O or to plaintiff's patent application before the patent issued. These were the only concrete embodiments of the alleged trade secret. As stated, plaintiff makes no claim of appropriation of a trade secret by the defendant Nusbaum. The defendant Neklason testified without contradiction that he did not see Exhibit O or plaintiff's patent application until after plaintiff's patent issued. The only evidence that Neklason knew of the alleged trade secret is the testimony by deposition of plaintiff's witness Wold, which was read into the record at 5 Tr. 541–582, that in a conversation between (Wold) and Neklason, the broad idea of putting the vertical adjustment into the router was discussed. Wold's recollection was that the subject was discussed only in a very general way. It was described repeatedly by Wold as a "passing thing" and without any details being discussed.

24. Wold clearly recalled that this discussion with Neklason occurred within a week or two after the first machine was delivered to plaintiff. Inasmuch as this first machine was delivered in June of 1960, this places the asserted conversation (if in fact it took place) in June or July of 1960.

25. Neklason testified that he did not learn of the alleged trade secret during his employment by plaintiff and that he had no recollection of any such conver-

sation with Wold. If there was such a conversation and if it included a discussion of or reference to a router assembly having a vertical adjustment feature, this establishes that such idea was known to Neklason prior to the time any rights were acquired in the idea by plaintiff. Plaintiff could not have acquired knowledge, hence possession, of the alleged trade secret until about April 25, 1961.

26. As of the date of the alleged Wold-Neklason conversation in June or July, 1960, neither Wold's testimony nor any other evidence attributes to plaintiff or to Virginia Green or to Leila Johnston the idea of putting the vertical adjustment into the router assembly. Insofar as the evidence shows, such idea may have been originated by Wold or by Neklason or by some other person other than plaintiff, Virginia Green or Leila Johnston.

27. There is no evidence that any of the employees of plaintiff, including Wold and Neklason, was under any obligation to communicate ideas to plaintiff or to assign ownership of such ideas and patent rights therein to plaintiff.

28. When defendants left plaintiff's employ and set up their own competing business and decided to build a model making machine, it was Nusbaum who first suggested that the vertical adjustment to be placed in the router assembly, and it was Neklason who thereafter, in response to Nusbaum's suggestion, suggested the rack and pinion mechanism which is shown in Fig. 4 of defendants' patent 3,224,339, Defs'. Exh. 8 and which was embodied in defendants' actual router assembly, Defs'. Exh. 25.

29. There is no evidence that plaintiff advised or in any manner brought home to its employees, including defendants, that any of the following items were secret and/or were to be treated in confidence:

(a) Its model making machine or components thereof.

(b) The broad idea of putting the vertical adjustment into the router assembly.

(c) The specific ideas set forth in Pl's. Exh. O, including the screw-in type of arrangement shown in Exhibit O and reproduced in Figure 2 of the patent.

At the time defendants left the employ of plaintiff they were warned that plaintiff's machine was plaintiff's property and was the subject of a pending patent application. However, any knowledge that defendants may have acquired of the alleged trade secret was acquired before this warning. Such warning was, at most, *ex post facto* in nature. Moreover, the asserted warning did not spell out any trade secret.

30. Assuming the existence of a trade secret with respect to Pl's. Exh. O, that defendants learned of this secret and that they appropriated it to their use, it was not a trade secret used in plaintiff's business and its use by defendants did not cause damage to plaintiff.

*Counterclaim for Unfair Competition:*

31. The defendants have not proven that plaintiff or anyone acting on behalf of plaintiff has made any statement to a customer or prospective customer of the defendants which damaged the defendants in any way.

32. The defendants have not proven that plaintiff or anyone acting on behalf of plaintiff has made any statement to any customer or prospective customer of the defendants which was either false or malicious or intended to drive the defendants out of the model making business.

*Counterclaim for Declaratory Relief:*

33. The Green et al. Patent contains three groups of claims, namely (a) claims directed toward the type of machine shown in Figs. 1 and 2 of the patent, (b) claims directed toward the type of machine shown in Figs. 3–5 of the patent, and claims which are generic to both types of machines. Plaintiff has charged the defendants with infringement of some of the claims in the first group mentioned above, but has not charged the defendants with infringement of any of the remaining claims in the patent.

34. In connection with the defendants' use of the accused machine illustrated in Exhibit Q, plaintiff seeks relief for patent infringement solely on this basis of Claims 4, 5, 11 and 14 of the patent, and were those claims either invalid or not infringed, the defendants would prevail in the patent infringement action.

35. No useful purpose would be served by rendering a declaratory judgment of invalidity or non-infringement of claims 1–3, 6–10, 12 or 13 of the Green et al. Patent.

## CONCLUSIONS OF LAW

### I

This court has jurisdiction of the subject matter of the patent infringement claim, the plaintiff's claim for unfair competition for theft of trade secrets, the defendants' counterclaim for unfair competition, and the defendants' counterclaim for declaratory relief, and this court has jurisdiction over the parties. Venue is properly laid.

### II

Claims 4, 5, 11 and 14 of the patent are not infringed by defendants because, if they are correctly interpreted under 35 U.S.C. § 112, these claims are limited to a particular form of device (a vertically adjustable router assembly as shown in Figure 2 of the patent). Defendants do not employ that form of device or its equivalent. Also, Claims 4 and 5 require the use of a reverse print which is not required or used in defendants' device.

### III

██ Plaintiff's cause of action for appropriation of trade secret fails because of lack of proof of:

(a) The existence of a protectable trade secret.

(b) Ownership of a trade secret by plaintiff.

(c) Knowledge by defendants of any trade secret, such knowledge being acquired by defendants under circumstances that would give rise to an obligation not to use the same.

(d) Use by defendants of any trade secret.

(e) Damage to plaintiff arising out of use of any trade secret by defendants.

### IV

Plaintiff has not competed unfairly with the defendants. Plaintiff is entitled to a judgment dismissing defendants' counterclaim for unfair competition.

### V

██ With respect to the application for attorney fees on the part of the defendants, the court denies the application under 35 U.S.C. § 285 and finds that it is fair, equitable and just that both parties pay their own attorneys' fees and costs.

An appropriate judgment may be prepared by defendants consistent with the foregoing.